United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

STANULUS ANTOINE,

        Plaintiff,

    v.

JACOB J. LEW, SECRETARY OF THE TREASURY,

        Defendant.

NO. C11-1265 TEH

<u>ORDER GRANTING SUMMARY JUDGMENT</u>

    This matter came before the Court on April 1, 2013, on Defendant's motion for summary judgment as to Plaintiff's single claim of discrimination under Title VII of the Civil Rights Act of 1964. After careful consideration of the parties' arguments and for the reasons set forth below, the Court now GRANTS the motion.

**BACKGROUND**

    In January, 2009, Plaintiff Stanulus W. Antoine, an African-American male, began working at the United States Mint in San Francisco as a temporary employee through an employment agency. Antoine Depo. at 45:10-14. Plaintiff worked as a coin assembly machine operator in the Packaging Division. Don Penning ("Penning"), the manager for the Packaging Division, then hired Plaintiff in November, 2009 for a one-year term position as a coin assembly machine operator for the Packaging Division at the San Francisco Mint. *See* Penning Depo. at 13:14-14:9, 99:12-100:15, Ex. 3. During Plaintiff's employment, he had no one-on-one interactions with Penning. Antoine Depo. at 58:3-19, 83:4-23.

1 Knives with blades longer than 2 ½ inches are prohibited at U.S. Treasury facilities.[1]
2 The San Francisco Mint Police, responsible for security at the San Francisco Mint facility,
3 allow limited exceptions for kitchen knives for use at personnel events. McCambell Decl. ¶
4 2; Abbey Depo. at 37:17-38:4. Employees are required to pass through a Magnetometer and
5 send all hand carried items and metal objects through an X-Ray machine when they enter the
6 Mint facility. McCampbell Decl. ¶ 3, Ex. A at USTREAS0534-35.

7 On March 8, 2010, the plant manager, Eric Valladares ("Valladares"), received a
8 complaint from Plaintiff's co-worker that Plaintiff brandished a knife at work.[2] Valladares
9 Depo. at 21:23-22:5, Ex. 3 ¶ 6 (Complaint). The complaint was routed to Penning because it
10 described an incident involving Packaging Division employees. *Id.* at 15:3-11. The next
11 day, Mint Police notified Penning that an officer found a prohibited knife in Plaintiff's items
12 going through the X-Ray machine. Penning Depo. at 57:16-58:5, 58:22-60:7; McCampbell
13 Decl. Ex. C (Incident Report). Penning consulted with other management officials regarding
14 the appropriate action to take and decided to terminate Plaintiff's employment. Penning
15 Depo. at 60:8-62:22, 63:18-64:20. Plaintiff was terminated on March 10, 2010. Antoine
16 Depo. Ex. 5 (Termination Ltr.).

17 Plaintiff alleges that: he brought the same knife to the San Francisco Mint and stored
18 it in his locker every day for over a year. Antoine Depo. at 110:25-111:2; 117:24-118:1-11.
19 He placed it, along with his other personal belongings, into a tray to go through the X-Ray
20 machine when entering the Mint. *Id.* at 108:14-109:1. He alleges that Mint Police never
21 questioned him about the knife, *id.* at 109:2-3, and that he was never informed of the policy
22 prohibiting knives. He asserts that other employees also brought knives to work.

---

[1] The United States Treasury Rules of Conduct prohibit employees from carrying "dangerous or deadly weapons." Remmert Decl. Ex. D § 0.215 at USTREAS0532. The Treasury Security Manual prohibits "weapons of any type" in all Treasury facilities, including knives with blades longer than 2 ½ inches. *Id.* Ex. C at USTREAS0427. Federal law prohibits the possession of firearms and dangerous weapons in federal facilities. 18 U.S.C. § 930. The definition of "dangerous weapons" includes pocket knives with a blade of 2 ½ inches or more. *Id.* § 930(g)(2).

[2] The matter was referred to Mint Police to investigate. Approximately one month after Plaintiff's termination, the investigation determined that Plaintiff had exhibited the knife, but not in a rude or threatening manner. Remmert Decl. Ex. F; McCampbell Decl. Ex. B at USTREAS0189.

2

1    U.S. Mint employee Fernando Myers ("Myers") testified at his deposition that he saw
2 other employees with pocket knives at the San Francisco Mint "a bunch of times." Myers
3 Depo. at 21:5-13.  Myers stated that he saw Buzz Sawyer ("Sawyer"), a Caucasian male, use
4 a knife with a blade approximately three to three and a half inches long to cut an apple. *Id*. at
5 21:15-24:2; 27:17-18.  Myers also stated that he saw Lily Moy ("Moy"), an Asian female,
6 habitually use a knife with a blade approximately five inches long that she kept in her bag.
7 Myers Depo. at 24:8-25:19; 27:15-16.  Mary Bolden ("Bolden"), an African-American
8 female, testified that she thought knives were permitted at work, Bolden Depo. at 75:10-14,
9 Ex. 4, and that she brought knives to work to cut cake for a celebration and would let Mint
10 Police know when she entered that she was bringing a knife. *Id.* at 38:18-25.  Probationary
11 employee Jerry Mabie ("Mabie"), a Caucasian male, brought a pocket knife to work but it
12 did not exceed the 2 ½ -inch limit.  Myers Depo. at 66:9-18, Ex 6; Bolden Depo. at 34:14-
13 35:20.  Another African-American male employee, Ralph Hodges ("Hodges"), was seen
14 using a knife that exceeded 2 ½ inches at an office event.  Antoine Depo. at 205:19-22.

15    There is no direct evidence in the record of knowledge by Penning of other
16 employees' use or possession of knives at the Mint facility.  Myers testified that he did not
17 report any of the knives he saw to any supervisors.  Myers Depo. at 78:10-12, 59:15-60:1.
18 The knives were seen in the cafeteria, where supervisors did not regularly eat.  Antoine
19 Depo. at 83:13-14, 124:22-126:5; Bolden Depo. at 89:24-90:9, 91:12-20, 92:4-8; Myers
20 Depo. at 84:22-85:8.  During a meeting in late 2012 or early 2013, Penning told employees to
21 get rid of any knives with blades over 2 ½ inches in length.  Myers Depo at 32:10-25.

22

23 **LEGAL STANDARD**

24    Summary judgment is appropriate when there is no genuine dispute as to material
25 facts and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).
26 Material facts are those that may affect the outcome of the case.  *Anderson v. Liberty Lobby,*
27 *Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there is
28 sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*  The

Court may not weigh the evidence and must view the evidence in the light most favorable to the nonmoving party. *Id.* at 255. The Court's inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

A party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). However, on an issue for which its opponents will have the burden of proof at trial, the moving party can prevail merely by "pointing out ... that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party meets its initial burden, the opposing party must "set forth specific facts showing that there is a genuine issue for trial" to defeat the motion. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 256.

**DISCUSSION**

A. The *McDonnell Douglas* Framework

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. 2000e-2(a)(1). The parties agree that the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), governs this case. Under *McDonnell Douglas*, a Title VII plaintiff must demonstrate a prima facie case of discrimination by showing that: (1) he is a member of a protected class, (2) he was performing the position he held competently, (3) he suffered an adverse employment action, and (4) "similarly situated individuals outside his protected class were treated more

4

1 favorably, or other circumstances surrounding the adverse employment action give rise to an
2 inference of discrimination." *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir.
3 2004); *McDonnell Douglas*, 411 U.S. at 802.

4       If the plaintiff succeeds in presenting a prima facie case, the burden of production
5 shifts to the employer to articulate a "legitimate, nondiscriminatory reason" for the adverse
6 employment action. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). An
7 employer's reasons need not rest upon true information. *Villiarimo v. Aloha Island Air, Inc.*,
8 281 F.3d 1054, 1063 (9th Cir. 2002). Instead, courts "only require that an employer honestly
9 believed its reasons for its actions, even if its reason is foolish or trivial or even baseless."
10 *Id.* (internal quotation marks and citation omitted).

11       Once the employer offers a legitimate reason, the burden shifts back to the plaintiff to
12 demonstrate that the alleged reason was a pretext for another, discriminatory reason. *Coons*
13 *v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 887 (9th Cir. 2004). To show pretext, the
14 employee must do more than deny the credibility of the employer's assertions; he "must also
15 offer specific and significantly probative evidence that the employer's alleged purpose is a
16 pretext for discrimination." *Schuler v. Chronicle Broad. Co. Inc.*, 793 F.2d 1010, 1011 (9th
17 Cir. 1986).

18 B. Application

19       The Court assumes, without deciding, that Plaintiff can show a prima facie case of
20 discrimination. It does so for two reasons: first, because even if Plaintiff makes out a prima
21 facie case of discrimination, he cannot show that the employer's justification was pretextual.
22 *See Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003) (similarly assuming
23 plaintiff showed prima facie case when he failed to show pretext). And second, Plaintiff's
24 case at the prima facie and pretext stages depends on the same evidence: evidence that other,
25 similarly situated employees were treated differently.[3]

26
27     [3] There appears to be no consensus about when such evidence of disparate treatment of other employees should be considered. *Compare Vasquez,* 349 F.3d at 641 ("A showing that the County treated similarly situated employees outside Vasquez's protected class more favorably would be probative of pretext"), *with Hawn v. Executive Jet Mgmt., Inc.*, 615 F.3d
28 1151, 1156-59 (9th Cir. 2010) (where plaintiff sought to raise inference of discrimination

5

Defendant offers a legitimate, non-discriminatory reason for terminating Plaintiff: Plaintiff was a probationary employee and he brought a prohibited knife to work. Defendant received a complaint about the knife. With this showing of a legitimate reason for the termination, the burden shifts back to Plaintiff to show that Penning used the knife incident as a pretext to discriminate against Plaintiff.

"A plaintiff can show pretext directly, by showing that discrimination more likely motivated the employer, or indirectly, by showing that the employer's explanation is unworthy of credence." *Vasquez*, 349 F.3d at 641 (footnote omitted). "To show pretext using circumstantial evidence, a plaintiff must put forward specific and substantial evidence challenging the credibility of the employer's motives." *Id.* at 642 (footnote omitted).

To support his claim of pretext, Plaintiff points out that other employees brought knives to work and were not disciplined or terminated: Buzz Sawyer, a caucasian male, frequently used a knife with a three-inch blade to cut an apple. Myers Depo. at 22:20 - 23:25, 27:17-18. Lily Moy, an Asian female, kept a five-inch knife in her purse. *Id*. at 24:8-25:19, 27:15-16. Mary Bolden, an African-American female, brought knives to work to cut cake with. Bolden Depo. at 75:10-14.

Defendant argues that these employees should not be considered similarly situated because of their non-probationary status. The Court need not decide, however, whether their non-probationary status disqualifies them as comparators because two over-arching distinctions make Plaintiff's comparison to these employees inapt. First, Plaintiff produces no evidence that Don Penning, the individual who decided to terminate him, knew that any other employees brought knives to work. Nor is there any evidence or argument that Penning's lack of knowledge was the product of willful or deliberate blindness. The only piece of evidence Plaintiff offers as to Penning's knowledge is that Penning held a meeting in late 2012 or early 2013 at which he told employees to get rid of any knives with blades longer than 2 ½ inches. Myers Depo at 32:10-25. Any statements Penning made in 2012,

---

based solely on circumstantial evidence of comparison to similarly situated employees, consideration of this evidence at prima facie stage was not improper).

1 however, show nothing about what Penning knew in 2010 when he made the decision to fire
2 Antoine. The 2012 meeting provides no basis from which a jury could infer that Penning
3 knew in 2010 that other employees were bringing knives to work. Plaintiff's argument – that
4 selective enforcement of the policy indicates a discriminatory motive – is *only* probative if
5 Penning knew that others were engaging in the same prohibited conduct. If Penning did not
6 know, his choice to terminate Plaintiff for violating the rule against knives raises no
7 inference that he singled out Plaintiff for negative treatment.

8 And second, the fact that a complaint was made about Plaintiff's use of the knife at
9 work is sufficient to distinguish Plaintiff's situation from that of the other employees with
10 whom he seeks to compare himself. *See Hawn v. Executive Jet Mgmt., Inc.*, 615 F.3d 1151,
11 1160 (9th Cir. 2010) ("We have distinguished misconduct by one employee from misconduct
12 by another employee on the basis of whether it prompted complaints or consternation by
13 other employees"). Whether or not Plaintiff brandished the knife during the incident which
14 brought the knife to his supervisor's attention or did so in a malicious way, Plaintiff's
15 conduct caused a complaint while that of the others did not.

16 Beyond the evidence that other employees also brought knives, Plaintiff offers only
17 the vague and inadmissible suggestion that Penning harbored prejudice against young,
18 African-American males. Beyond his own opinion in this regard, Plaintiff offers the
19 deposition testimony of Mary Bolden who heard several unnamed former Mint employees
20 "say certain things as far as maybe not – how do I say this? [Penning] [n]ot liking – or had
21 something against, I would just say, the young black men, something like that, young black
22 men." Bolden Depo. (Dkt. No. 30-4) at 40:25-46:3. Plaintiff offers no reasonable path to
23 admissibility for this multiple-hearsay evidence, either in his papers or in his oral argument,
24 and the Court sees none. And even if Plaintiff were somehow able to introduce this evidence
25 that these other, former employees felt that Penning was racist, the evidence is still
26 insufficient to show pretext. Circumstantial evidence of pretext must be "specific and
27 substantial" in order to create a triable issue of fact as to whether the employer's proffered
28 motives were not the actual motives. *Blue v. Widnall*, 162 F.3d 541, 546 (9th Cir. 1998)

7

1  (internal quotation marks and citation omitted); *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393
2  (9th Cir. 1983).
3     Plaintiff was hired by Penning a short time earlier and alleges in his papers that he
4  brought the same knife to work every day. He raises no triable issue as to whether Penning
5  chose to fire him on March 10 for any reason other than Plaintiff's possession of a prohibited
6  knife.

8  **CONCLUSION**
9     For the reasons discussed above, Plaintiff fails to show that the legitimate reason
10 offered by his employer for his termination was pretextual. Accordingly, the Court
11 GRANTS Defendant's motion for summary judgment. This terminates the case.

13 **IT IS SO ORDERED.**

15 Dated: 4/2/13

16 THELTON E. HENDERSON, JUDGE
   UNITED STATES DISTRICT COURT